UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE MONEY SOURCE INC.,

                                                                      Case No.: 2:22-cv-5204

                      Plaintiff,

      -against-                                         **COMPLAINT**

AMERICAN KEN HOME MORTGAGE, LLC,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff, THE MONEY SOURCE INC., by its counsel, MILMAN LABUDA LAW GROUP PLLC, sets forth the following allegations in support of its Complaint against AMERICAN KEN INC. ("Defendant" or "AMERICAN KEN"):

**PARTIES, JURISDICTION and VENUE**

1. At all times hereinafter mentioned, Plaintiff THE MONEY SOURCE INC. ("Plaintiff" or "TMS"), was and still is a domestic business corporation, authorized and duly licensed to conduct and transact business in the State of New York, its state of incorporation, with its principal corporate headquarters and executive offices located at 1800 Walt Whitman Road, Suite 130, City of Melville, County of Suffolk, State of New York.

2. Upon information and belief, and at all times hereinafter mentioned, Defendant AMERICAN KEN, was at all relevant times herein a California corporation, with its principal place of business in Diamond Bar, California.

3. Venue is proper in this Court under 28 U.S.C. § 139l(a) based upon a Correspondent Loan Purchase Agreement entered into between TMS and AMERICAN KEN on or about October 15, 2019 ("TMS Agreement") wherein the parties agreed to submit to the jurisdiction of

the courts located in Suffolk County, New York, and agreed that venue is proper before the United States District Court for the Eastern District of New York.

## FACTUAL ALLEGATIONS

4. Plaintiff TMS is a nationwide aggregator, lender, servicer and sub-servicer in the mortgage industry, engaging primarily in wholesale and correspondent lending, as well as servicing and sub-servicing and carrying approvals by the Government National Mortgage Association ("Ginnie Mae"), the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac").

5. Plaintiff TMS is a company in good standing and with national reputation in the mortgage banking industry, which carries mortgage banking licenses in 50 states, as represented in the Nationwide Mortgage Licensing System, or "NMLS," while further identified under its NMLS Company License and Identification Number, #6289.

6. Defendant AMERICAN KEN is a licensed mortgage banker and is represented in the Nationwide Mortgage Licensing System, or "NMLS," while further identified under its NMLS Company License and Identification Number, #348865.

7. Plaintiff TMS and Defendant AMERICAN KEN entered into the TMS Agreement, whereby Defendant AMERICAN KEN became an approved correspondent of Plaintiff TMS so AMERICAN KEN could sell closed mortgage loans to TMS, and the parties could carry on a valid business relationship and transact business of this nature under the guidance of the defined terms of this TMS Agreement.

8. With respect to the business relationship between the parties, AMERICAN KEN, as an approved correspondent lender with TMS, would offer to sell mortgage loans to TMS, who would evaluate the loans and decide whether to agree to purchase said loans from AMERICAN KEN.

9. Section 1 of the TMS Agreement incorporated the TMS's Correspondent Seller's Manual (the "Manual"), which "shall be deemed to be an inseparable and indispensable part of this Agreement …."

10. Section 7 of the TMS Agreement contains AMERICAN KEN's representations and warranties.

11. Among AMERICAN KEN's representations and warranties in Section 7 of the TMS Agreement is the representation that "each Loan … complies with all criteria contained in the Manual …."

12. Among AMERICAN KEN's representations and warranties in Section 7 of the TMS Agreement is the representation that "each Loan … complies with all criteria contained in the Manual …."

13. Section 7 of the TMS Agreement requires AMERICAN KEN to adhere to the stated conditions, representations and warranties, and provides a number of remedies to TMS in the event of breach in various circumstances, including, by way of example, a determination by TMS "that there is any evidence of fraud in the origination of the Loan … or that any information or documentation in the Loan file is not true and correct, or if material information was not disclosed in the Loan file"; or "if TMS has sold such Loan in whole or part to" an Agency or "private investor" and such entity "requests TMS to repurchase said interest or reimburse it for losses … provided that the reason for such ineligibility, repurchase, reimbursement, or denial shall be due to the failure of the Loan to meet requirements specified in the Manual at the time of TMS's purchase of the Loan from Seller"; or AMERICAN KEN "fails to observe or perform, or breaches any of the representations, warranties, or agreements contained in this Agreement or the Manual with respect to a particular Loan."

3

14. Section 8 of the TMS Agreement requires AMERICAN KEN to repurchase loans that had be sold to TMS if certain conditions applied.

15. Section 10 of the TMS Agreement states that, among other things, AMERICAN KEN will "hold TMS harmless and shall indemnify TMS from and against any and all … costs, damages, fees or claims, including without limitation reasonable attorney's fees ('Loss'), arising out of or in connection with any negligence, fraud or material omission on the part of Seller in receiving, processing or funding any Loan committed to TMS for sale under Section 2 above, during the origination period and Commitment Period up to and including the Purchase Date. Seller's obligation to TMS in this regard shall remain effective after TMS's purchase of the Loan if the actions giving rise to the Loss arose prior to purchase but was undetected at time of purchase …."

16. Section 10 of the TMS Agreement states that, among other things, AMERICAN KEN will "hold TMS harmless and shall indemnify TMS from and against any and all … costs, damages, fees or claims, including without limitation reasonable attorney's fees (both in-house and outside counsel) arising out of or in connection with any breach of any one or more of the obligations set forth in paragraphs (1) through (8) of Section 8.A of this Agreement."

17. Section 10 of the TMS Agreement also states that, among other things, AMERICAN KEN will "hold TMS harmless and shall indemnify TMS from and against any and all losses arising out of or in any way related to Seller's breach of any representation or warranty set forth in Sections 7.A and 7.B of this Agreement."

18. AMERICAN KEN's indemnification obligations under Section 10 expressly "survive any sale or assignment of any Loan by TMS … or any termination of this Agreement."

19. Section 14 of the TMS Agreement provides TMS with rights to suspend and/or terminate the TMS Agreement.

20. In addition to the terms of the TMS Agreement, the Manual sets forth terms and conditions under which the parties would transact business and notably, where TMS would reserve its rights to demand its lenders, such as AMERICAN KEN, repurchase any loans previously purchased by TMS from AMERICAN KEN, should any default or other event of default require AMERICAN KEN to repurchase any of the loans it sold TMS, and indemnify TMS for these types of issues, and make TMS whole for any and all losses and costs for AMERICAN KEN's breach of contract, as required by the relevant provisions of the TMS agreement which clearly preserves these rights for TMS, in these situations.

21. At times during the parties' business relationship, it is not only industry custom and practice, but also a right specifically reserved under agreements like those reserved under the TMS Agreements.

22. After review of a number of mortgage loans that Plaintiff TMS previously purchased from Defendant AMERICAN KEN, Plaintiff uncovered numerous delinquencies/issues due to past due balances, Early Payment Defaults, Agency Repurchase Demand and Insurability issues, Misrepresentations of Primary Occupancy Status, Proof of Employment, Proof of Income, Verification of Employment and Income Verification and Representations as to current debt/mortgage status with respect to twenty-one (21) nonperforming and deficient loans (hereinafter referred to as the "AMERICAN KEN DEFICIENT LOANS").

23. Defendant AMERICAN KEN has failed to repurchase, indemnify and make TMS whole for any and all losses and costs for all AMERICAN KEN DEFICIENT LOANS, which to this date, remain outstanding.

24. By failing to make TMS whole and remit payment on any and all of AMERICAN KEN DEFICIENT LOANS, AMERICAN KEN materially breached the terms of the TMS Agreement to which it was required to abide by and is legally bound.

25. Plaintiff TMS has been severely and unnecessarily damaged by Defendant's material breach of the TMS Agreement with Plaintiff, in forcing Plaintiff TMS, without right or justification, to continue to retain these defective loans, well beyond the time originally anticipated and acceptable pursuant to its Agreement with Defendant AMERICAN KEN, only further augmenting the damages and fees associated with holding these loans for extended periods of time.

### AS AND FOR A FIRST CAUSE OF ACTION AS AGAINST DEFENDANT AMERICAN KEN, BREACH OF CONTRACT

26. Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "25" as if more fully set out herein.

27. There exists a valid contract between Plaintiff and Defendant.

28. Plaintiff performed pursuant to said contract in that Plaintiff purchased mortgage loans from its approved correspondent, Defendant AMERICAN KEN.

29. Defendant has breached the terms of the contract, as Defendant has previously agreed to be bound and is so obligated.

30. Defendant has failed to indemnify Plaintiff.

31. Defendant has further breached the relevant terms within the above-referenced sections of the TMS Agreement within a reasonable timeframe in continued breach to the further damage of Plaintiff TMS.

32. Defendant's actions have operated as a repudiation of the TMS Agreement by Defendants AMERICAN KEN, and it would be futile to continue to wait for Defendant

AMERICAN KEN to adhere to its obligation under the TMS Agreement to which it has breached, before commencing additional breach of contract actions.

33. To date, Defendant AMERICAN KEN has ceased communications with Plaintiff TMS, while remaining contractually obligated to repurchase the loans already demanded by TMS, thus severely damaging Plaintiff TMS who continues to hold these deficient mortgage loans.

34. To date, Defendant AMERICAN KEN has failed to comply with its clear contractual obligations concerning all loans referenced in this complaint from Plaintiff TMS.

35. By reason of the foregoing, the Plaintiff has suffered damages in the amount of TEN MILLION THREE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS ($10,365,000.00), which comprises the demand amounts, administrative fees and costs owed by Defendant AMERICAN KEN to date for the AMERICAN KEN DEFICIENT LOANS, due to this breach.

### AS AND FOR A SECOND CAUSE OF ACTION AS AGAINST DEFENDANT AMERICAN KEN: UNJUST ENRICHMENT

36. Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "35" as if more fully set out herein.

37. To prevail on a claim for unjust enrichment in New York State, a plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff…and as such, requires restitution." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001); *Kaye v. Grossman*, United States Court of Appeals, Second Circuit, Docket No. 99-7571 (February 1, 2000), citing, *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir.1983).

38. Plaintiff purchased, securitized, holds, and continues to service these AMERICAN KEN DEFICIENT LOANS.

39. Plaintiff took these actions at the behest of Defendant AMERICAN KEN, and Defendant AMERICAN KEN received and has retained the benefit of Plaintiff's actions.

40. Plaintiff's purchase, securitization, holding, and servicing of these AMERICAN KEN DEFICIENT LOANS was based on the expectation that AMERICAN KEN was acting in good faith in receiving, processing or funding any Loan committed to TMS for sale.

41. Among other things, the expectation was that loans would not be committed to TMS for sale unless they complied with the quality control standards as set forth in the TMS Agreement and that Defendant AMERICAN KEN would adhere to its repurchase and indemnity obligations upon demand if it was found that the subject loans failed to so comply.

42. Defendant AMERICAN KEN failed to adhere to these requirements despite having received demands to immediately do so.

43. The presumption is Defendant will continue to ignore its obligations under which the parties agreed and contracted for, and thus, further causing Plaintiff substantial financial harm.

44. It is against equity and good conscience to permit the Defendant AMERICAN KEN to retain what is sought to be recovered by Plaintiff.

45. By reason of the foregoing, Defendant AMERICAN KEN has been unjustly enriched in the principal amount of TEN MILLION THREE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS ($10,365,000.00), plus costs and interest.

### AS AND FOR A THIRD CAUSE OF ACTION AS AGAINST DEFENDANT AMERICAN KEN: INDEMNIFICATION

46. Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "45" as if more fully set out herein.

47. The TMS Agreement is a valid and enforceable contract binding upon the parties.

48. TMS substantially performed its obligations and duties under the TMS Agreement when it purchased the Loans from AMERICAN KEN.

49. As set forth above, the TMS Agreement contains provisions at Section 10 requiring AMERICAN KEN to indemnify TMS for losses, including attorneys' fees.

50. AMERICAN KEN has breached the indemnification provision of the TMS Agreement found at Section 10 by failing to indemnify TMS against losses incurred due to, among other acts and omissions, providing materially inaccurate, incomplete, false or misleading information to TMS, and by failing to indemnify TMS against losses incurred as a result of AMERICAN KEN's breaches of representations and warranties as well as its repurchase obligations as contained in Sections 7 and 8 of the TMS Agreement.

51. AMERICAN KEN's breach of the indemnification provision has resulted in damages to TMS.

52. Accordingly, TMS has been damaged in a sum to be determined at trial, but believed to be at least TEN MILLION THREE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS ($10,365,000.00), plus costs, interest and reasonable attorneys' fees.

### AS AND FOR A FOURTH CAUSE OF ACTION AS AGAINST DEFENDANT AMERICAN KEN: SPECIFIC PERFORMANCE

53. Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "52" as if more fully set out herein.

54. The TMS Agreement is a valid and enforceable contract binding upon the parties.

55. TMS substantially performed all of its obligations and duties under the TMS Agreement when it purchased the loans from AMERICAN KEN.

56. Defendant breached to Section 8 of the TMS Agreement, in addition to its other remedies, TMS may demand repurchase of certain mortgage loans by AMERICAN KEN.

57. AMERICAN KEN breached Section 8.A. of the TMS Agreement by failing to repurchase loans in accordance with the TMS Agreement.

58. AMERICAN KEN has breached the warranties and representations made at Section 7 of the TMS Agreement for each Loan herein referenced.

59. AMERICAN KEN breached Section 10 of the TMS Agreement by failing to indemnify TMS against losses incurred with respect to the Loans as set forth above.

60. TMS, by and through its agents, has made demands to AMERICAN KEN, but AMERICAN KEN has failed to comply.

61. TMS has been required to indemnify as well as repurchase Loans from investors.

62. Accordingly, TMS is entitled to specific performance compelling AMERICAN KEN to perform under the TMS Agreement.

**AS AND FOR A FIFTH CAUSE OF ACTION AS AGAINST
DEFENDANT AMERICAN KEN:  BREACH OF WARRANTY**

63. Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "62" as if more fully set out herein.

64. The TMS Agreement is a valid and enforceable contract binding upon the parties.

65. TMS substantially performed its obligations and duties under the TMS Agreement when it purchased the Loans from AMERICAN KEN.

66. Pursuant to Section 7 of the TMS Agreement, AMERICAN KEN represented and warranted, among other things, that the Loans it sold to TMS were eligible for purchase in accordance with the TMS Agreement and the Manual under the loan programs offered by TMS and that each of the Loans constituted an acceptable investment.

67. AMERICAN KEN has breached Section 7 of the TMS Agreement by, among other things, selling loans that were not eligible for purchase under the loan programs offered by TMS.

68. AMERICAN KEN has breached Section 7 of the TMS Agreement by selling a loan which did not constitute an acceptable investment.

69. TMS has been damaged by AMERICAN KEN's breaches of its representations and warranties which has necessitated TMS to indemnify its investors.

70. Accordingly, TMS has been damaged in a sum to be determined at trial, but believed to be at least TEN MILLION THREE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS ($10,365,000.00), plus costs and interest.

### AS AND FOR A SIXTH CAUSE OF ACTION AS AGAINST DEFENDANT AMERICAN KEN:  CONTRACTUAL LEGAL FEES AND COSTS

71. Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "69" as if more fully set out herein.

72. Pursuant to the TMS AGREEMENT the Defendant is responsible for all legal fees and costs of litigation and preparation thereof incurred by the Plaintiff.

73. By reason of the foregoing, the Plaintiff has suffered damages in an amount to be determined by the Court.

**WHEREFORE**, Plaintiff TMS respectfully requests this Honorable Court to grant judgment in its favor and against Defendant AMERICAN KEN:

(A) On the First Claim, for damages in the amount of TEN MILLION THREE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS ($10,365,000.00), plus costs, interest and attorneys' fees;

(B) On the Second Claim, for damages in the amount of TEN MILLION THREE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS ($10,365,000.00), $2,123,876.50, plus costs, interest and attorneys' fees;

(C) On the Third Claim, for damages in the amount of TEN MILLION THREE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS ($10,365,000.00), $2,123,876.50, plus costs, interest and attorneys' fees;

(D) On the Fourth Claim for an order compelling AMERICAN KEN to perform as per the TMS AGREEMENT;

(E) On the Fifth Claim, for damages in the amount of TEN MILLION THREE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS ($10,365,000.00), plus costs, interest and attorneys' fees;

(F) On the Sixth Claim, for damages in an amount to be determined by the Court for costs, interest and attorneys' fees;

(G) For such other and further relief as the Court may deem just and proper.

Dated: Lake Success, New York
August 31, 2022

Respectfully submitted,

MILMAN LABUDA LAW GROUP PLLC

_____
Michael C. Mulè, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
michaelmule@mllaborlaw.com
*Attorneys for Plaintiff*